Dirk O. Julander, Bar No. 132313
  *doj@jbblaw.com*
M. Adam Tate, Bar No. 280017
  *adam@jbblaw.com*
JULANDER, BROWN & BOLLARD
9110 Irvine Center Drive
Irvine, California 92618
Telephone:  (949) 477-2100
Facsimile:  (949) 477-6355

Attorneys for Plaintiff Arbor Advisors, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ARBOR ADVISORS, LLC, a California limited liability company, | Case No. |
| Plaintiff, | **COMPLAINT FOR:** |
| vs. | 1. **BREACH OF CONTRACT** |
| MODIFACE, INC. a Toronto, Canada corporation, | 2. **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING** |
|  | 3. **COMMON COUNTS** |
| Defendant. | **DEMAND FOR JURY TRIAL** |

Plaintiff, ARBOR ADVISORS, LLC, alleges for its Complaint against Defendant, MODIFACE, INC., as follows:

### PARTIES

1.      Plaintiff, ARBOR ADVISORS, LLC ("Plaintiff" or "Arbor") is, and at all relevant times was, a California limited liability company that maintains its principal place of business in the City of San Mateo, San Mateo County, California.

2.      Defendant, MODIFACE, INC. ("Defendant" or "ModiFace") is, and at all relevant times was, an Ontario, Canada corporation that maintains its principal place of business in Toronto, Canada.

### JURISDICTION AND VENUE

3.      Subject matter jurisdiction exists in this case pursuant to 28 U.S.C. § 1332 as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

4.     This Court has personal jurisdiction over the Defendant because the Defendant executed an Engagement Agreement by which it agreed to submit to the jurisdiction of this Court for disputes arising out of that contract.

**FACTUAL BACKGROUND**

5.     Arbor is a highly successful technology investment bank specializing in M&A and capital raising advisory services to high-growth technology companies.

6.     ModiFace is an augmented reality technology company that provides services to the beauty and technology industry.

7.     On or about June 26, 2015, ModiFace and Arbor entered into an Engagement Agreement (the "Agreement").  A true and correct copy of the Agreement is attached hereto as Exhibit 1 and incorporated herein by this reference.  Under that Agreement, ModiFace engaged Arbor to render the services set out in Section 1 of the Agreement.

8.     Pursuant to Section 1 of the Agreement, Arbor agreed to assist ModiFace in negotiating terms of a "Transaction" (as that term is defined in the Agreement), and advising it on the terms of any proposed Transaction.  In exchange, Arbor received a retainer of $50,000 and, should a Transaction close, Arbor would receive a "Transaction Fee."  This fee consisted of 10% of the "Aggregate Consideration" (as defined in the Agreement) less than or equal to $10,000,000, plus 6% Aggregate Consideration greater than $10,000,000 and less than $15,000,000, plus 6.5% of the Aggregate Consideration greater than $15,000,000 and less than $20,000,000, plus 7% of the Aggregate Consideration greater than $20,000,000.

9.     Either party could terminate the Agreement at any time.  If ModiFace terminated the Agreement, Arbor would still be entitled to a Transaction Fee if a Transaction occurred within a twelve-month tail period following termination.  Specifically, the Agreement provided:

> Arbor's Engagement hereunder may be terminated by either the
> Company or Arbor at any time, with or without cause, upon written
> or email notice to that effect to the other party ("Written
> Termination") . . . . If the Company terminates the engagement,
> Arbor will be entitled to its full Transaction Fee if at any time prior
> to the expiration of 12 months after the effectiveness of any such
> Written Termination a Transaction is consummated.

10.     After the parties entered into the Agreement, Arbor began working for ModiFace. Arbor contacted and worked with numerous companies and performed all that it had agreed to do under the Agreement in an effort to generate a Transaction.  Despite those efforts, Arbor was unable to present ModiFace with a Transaction that satisfied ModiFace's requirements.

11.     On June 22, 2017, ModiFace's CEO, Parham Aarabi, emailed Arbor and provided a Written Termination pursuant to Section 5 of the Agreement. Specifically, Mr. Aarabi wrote:

> Dear David,
>
> As discussed today, it has been a pleasure working with you in the past two year [sic].  I have appreciated your guidance and advice, and look forward to working with you again when the time is right.
>
> Also, as discussed today, we will be officially ending our engagement with Arbor.  This email will serve as written notice of the Termination of the engagement letter that was executed on June 26, 2015.  I would greatly appreciate if you could send an email confirmation of receipt of this Termination notice.
>
> Thanks again, for everything, and let's keep in touch.
>
> Perham.

A true and correct copy of the June 22, 2017 email by Mr. Aarabi is attached hereto as Exhibit 2.

12.     Arbor is informed and believes, and based thereon alleges, that after ModiFace terminated the Agreement, ModiFace entered into a purchase agreement with L'Oreal.  ModiFace concealed this fact from Arbor.

13.     Arbor is informed and believes and on that basis alleges that on or about March 16, 2018, approximately nine months after ModiFace terminated the Agreement, L'Oreal entered into an agreement with ModiFace that was a Transaction under Arbor's Agreement.  A true and correct copy of the news release published by L'Oreal confirming the Transaction is attached hereto as Exhibit 3.  Further, because this Transaction occurred within the agreed 12 month post-termination period, Arbor was entitled to a Transaction Fee based on the consumated agreement with L'Oreal.

14.     Arbor has contacted ModiFace requesting that it be paid for its Transaction Fee under the Agreement which, under Section 2 is a minimum of $1,000,000.00.   ModiFace, however, has refused to disclose the value of the Transaction with L'Oreal and has refused and continues to refuse to pay Arbor the agreed upon Transaction Fee.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

15. Arbor repeats the allegations of paragraphs 1 through 14 as if fully set forth herein.

16. On June 26, 2015, Arbor and Defendants entered into the Agreement, pursuant to which Arbor was "entitled to its full Transaction Fee if at any time prior to the expiration of 12 months after termination by the Company, a Transaction is consummated."

17. On or about March 16, 2018, ModiFace consummated a Transaction with L'Oreal.

18. Beginning in March 2018, ModiFace breached the Agreement as set forth above by refusing to pay Arbor its full Transaction Fee after closing the Transaction with L'Oreal within the post-termination 12 month period.

19. Arbor performed all of its obligations pursuant to the Agreement, except as excused by law or by ModiFace's breach.

20. As a proximate result of ModiFace's breach of the Agreement, Arbor has sustained general and consequential damages in an amount to be determined at trial, but not less than $1,000,000.00.

## SECOND CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

21. Arbor repeats the allegations of paragraphs 1 through 14 as if fully set forth herein.

22. The Agreement contains an implied covenant of good faith and fair dealing obligating the parties not to do anything to unfairly interfere with the right of the other party to receive the benefits of the Agreement.

23. Notwithstanding its contractual obligations and prohibitions, ModiFace entered into a Transaction with L'Oreal with the misguided intent to deprive Arbor of its Transaction Fee under the Agreement. Even though the Transaction Fee is still owed under the circumstances orchestrated by ModiFace, the concealed agreement illustrates an intent on the part of ModiFace to frustrate the purpose of the Agreement between it and Arbor.

/ / /

/ / /

24.     In engaging in the conduct described herein, ModiFace consciously and deliberately acted in bad faith to unfairly frustrate the agreed-upon purpose of the Agreement and disappointed the reasonable expectations of Arbor.

25.     Arbor has performed all of its duties and obligations required of it to be performed pursuant to the Agreement, except as excused by law or ModiFace's breach.

26.     As a result of ModiFace's breach of the implied covenant of good faith and fair dealing, Arbor has sustained general and consequential damages in an amount to be determined at trial, but not less than $1,000,000.00.

### THIRD CAUSE OF ACTION

### (Common Counts)

27.     Arbor repeats the allegations of paragraphs 1 through 14 as if fully set forth herein.

28.     On or about March 16, 2018, ModiFace became indebted to Arbor in the agreed amount of at least $1,000,000.00 for work, labor, and services rendered by Arbor to ModiFace at its special request.

29.     No part of this amount has been paid, and there is now due, owing, and unpaid from ModiFace to Arbor the amount of at least $1,000,000.00, with interest on that amount at the maximum legal rate from March 16, 2018.

### PRAYER

WHEREFORE, Arbor requests judgment in its favor and against ModiFace as follows:

1.     For general, compensatory, consequential, and special damages in an amount to be determined according to proof at the time of trial, but not less than $1,000,000.00;

2.     For pre-judgment and post-judgment interest as allowed by law;

3.     For costs of suit incurred herein; and

4.     For such other and further relief as the Court may deem just and proper.

/ / /

/ / /

/ / /

/ / /

1

### JURY DEMAND

2      Arbor respectfully requests trial by jury as to all issues so triable.

3

4  DATED:  April 24, 2018         JULANDER, BROWN & BOLLARD

5

6

7                    By:  _____

Dirk O. Julander

8                       M. Adam Tate

Attorneys for Arbor Advisors, LLC

COMPLAINT